Presented to the Court by the foreman of the Grand Jury in open Court, in the presence of the Grand Jury and FILED in the U.S. DISTRICT COURT at Seattle, Washington.

October 4th 20 23

Ravi Subramanian, Clerk

By_____ Deputy

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff <br><br> v. <br><br> PAUL WALN, and <br> TAMARA KING <br> a/k/a Tamara Waln, <br><br> Defendants. | NO. **CR 23 - 159 RSM** <br><br> **INDICTMENT** |

The Grand Jury charges that:

## COUNT 1

**(Conspiracy to Commit Wire Fraud)**

**A.     Summary**

1.     Defendant Paul Waln solicited over $2.25 million from investors by promising to invest their money in a real estate fund called "Halcyon." Waln said he would manage Halcyon for ten years, and would use the investment funds to purchase and sell real estate over that period. Waln promised that, at the end of the 10-year term, he would return Halcyon investors' principal and earnings to them.

2.     Beginning no later than 2014, Waln and his then-wife, Tamara King, conspired to defraud Halcyon investors by secretly funneling investors' money from

*United States v. Waln et al*
USAO No. 2020R00248
Indictment - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Halcyon to other business entities defendants controlled, and then spending the money for their own purposes instead of investing the money in real estate as promised.

3.      By late 2018, defendants had misappropriated all of the Halcyon investors' money. Knowing the deadline to repay the investors was approaching, Waln falsely told investors the real estate projects had failed because defendants' general contractor and business partner had been diagnosed with cancer. In fact, the contractor had never been diagnosed with cancer, and the reason they could not repay investors was because Waln and King had stolen investors' funds for personal use. As a result of this conduct, all of the remaining investors lost their entire investments.

**B.      Background**

**1.      Waln Forms Halcyon and Raises $2.25 Million**

4.      Defendant Paul Waln was a real estate broker and resident of Bellevue and Kirkland, Washington. Defendant Tamara King, a/k/a Tamara Waln, was also a real estate agent and resident of Bellevue and Kirkland. Waln and King married in June 2013 and divorced in May 2018.

5.      Between March 2009 and July 2015, Waln was the sole owner and manager of HTI Wealth Creation Group, LLC, a Washington limited liability corporation.

6.      In September 2009, Waln formed a Washington corporation called Halcyon Apartments CC4R, LLC ("Halcyon"). Halcyon's stated business purpose was initially to purchase, remodel, and manage a 23-unit apartment building in West Seattle (the "Halcyon Building").

7.      Between about August 2009 and December 2013, Waln offered for sale "units" of equity in Halcyon, which were priced at $25,000 per unit. Waln told investors he would use the offering proceeds to purchase and manage the Halcyon Building, and potentially, other real properties. Investors would be required to leave their investments in Halcyon for ten years. Waln projected that investors' capital would grow at an annual

*United States v. Waln et al*
USAO No. 2020R00248
Indictment - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

rate of at least 20%. Waln said that, at the end of the term, he would return the investment principal and earnings to the members.

8. Waln prepared offering materials and distributed them to prospective investors. The materials included a Private Offering Memorandum, a Members' Agreement, and an Operating Agreement. The offering materials represented that Waln would use the offering proceeds exclusively for Halcyon's business purposes, that is, for real estate development and related business. Halcyon's Operating Agreement provided that "the Company may not engage in any business or activity other than the company's business, unless specifically approved by Halcyon's Members."

9. The offering materials stated that Waln's management company, HTI Wealth Creation Group, would manage Halcyon, and would receive a management fee in return. The Private Offering Memorandum set the management fee at "1% of the value of the property or properties owned by Halcyon."

10. Based on Waln's promises and representations, including those in the offering materials, investors (members) invested approximately $2.25 million in Halcyon. In October 2009, Halcyon used the investment proceeds to purchase the Halcyon Building.

**2. Defendants Marry and Begin to Jointly Manage Halcyon**

11. Waln and King began a personal relationship in about June 2012, and were engaged in about December 2012. In addition to their personal relationship, defendants agreed to work together on real estate projects. Because Waln owed substantial debts, including business debt, tax debt, and alimony to his ex-wife, Waln and King agreed that their joint business enterprises would be placed in King's name, and the money distributed by their enterprises would be paid to accounts held in King's name.

12. In March 2013, in accordance with her agreement with Waln, King formed a new corporation called HTI Wealth LLC ("HTI Wealth"). King was HTI Wealth's manager and sole member. Waln served as HTI Wealth's CEO. The defendants later

*United States v. Waln et al*
USAO No. 2020R00248
Indictment - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

changed HTI Wealth's name to "Waln Team LLC." The entity that was formed as HTI Wealth LLC and then renamed Waln Team LLC will be referred to in this Indictment as "HTI Waln Team." Waln and King jointly operated HTI Waln Team.

13.    On August 21, 2013, the defendants agreed to install HTI Waln Team in place of HTI Wealth Creation Group (the entity owned by Waln) as Halcyon's manager. In September 2013, defendants began paying Halcyon's monthly management fee to HTI Waln Team.

**C.    The Conspiracy**

14.    Beginning no later than February 2014, and continuing until at least December 15, 2018, in King County, within the Western District of Washington, and elsewhere, TAMARA KING and PAUL WALN conspired, confederated, and agreed to commit the offense of wire fraud in violation of Title 18, United States Code, Section 1343. That is, the defendants agreed to knowingly devise a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, promises, and omissions. The defendants agreed that, to execute and attempt to execute the scheme and artifice to defraud, defendants would transmit, and cause to be transmitted, by wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds.

15.    The object of the conspiracy was to secretly misappropriate money that was the rightful property of investors and investment vehicles under defendants' management, including Halcyon Apartments CC4R, LLC, by transferring the money to HTI Waln Team and defendants' other business entities, and otherwise to benefit themselves, instead of investing the money in real estate as Waln had promised investors. Defendants then used the stolen money to pay personal expenses of King and Waln, and the expenses of Waln and King's other business entities. To avoid returning the money, defendants omitted material information and lied to investors about these transfers and the status of Halcyon's real estate projects.

*United States v. Waln et al*
USAO No. 2020R00248
Indictment - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**D.      Manner and Means**

The following conduct was part of defendants' scheme and artifice to defraud:

**1.      Defendants Begin Secretly Diverting Money from Halcyon to HTI Waln Team.**

16.      No later than February 2014, defendants began misappropriating Halcyon funds by transferring the money to other entities they controlled. On February 12, 2014, King, in her role as Halcyon's manager, secretly transferred $26,000 from Halcyon to HTI Waln Team. In a private memo not disclosed to Halcyon investors, King wrote that the payment was compensation for HTI Waln Team's services in arranging financing for Halcyon. In fact, HTI Wealth was already compensated for management services (such as arranging financing) through its 1% management fee.

17.      The same day, King transferred an additional $25,000 from Halcyon to HTI Waln Team. King prepared a secret memorandum characterizing the $25,000 payment as a "loan" from Halcyon to HTI Waln Team. Defendants did not prepare any promissory note or other loan documentation; did not secure the "loan;" and never repaid it. Defendants did not disclose this transfer to investors.

18.      On September 9, 2015, defendants secretly caused Halcyon to transfer an additional $125,000 from Halcyon to HTI Waln Team. In an internal memo not disclosed to investors, Waln characterized the transfer as a "short-term loan that will be paid back as soon as possible." Again, the defendants did not prepare any promissory note or other formal loan documentation, did not secure the "loan," and never repaid it. Defendants caused $66,000 of the misappropriated funds to be transferred to King's personal bank accounts, and used $10,500 to pay a debt of Waln. Defendants used most of the remainder of the funds to pay HTI Waln Team's business expenses, including Waln's salary. Defendants did not disclose these transfers to investors.

*United States v. Waln et al*
USAO No. 2020R00248
Indictment - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## 2.   Defendants Divert Halcyon Funds Into Their Kahala Project

19.   On August 4, 2014, defendants transferred $300,000 from Halcyon to another investment vehicle they controlled called Kahala Investments CC4R LLC. King prepared an undisclosed memo stating that the transfer was payment for 12 investment units in Kahala. On December 28, 2015, and February 10, 2016, defendants made two additional $25,000 transfers from Halcyon to Kahala. For each transaction, Waln prepared an undisclosed memo stating that the transfer was payment for an additional Kahala investment unit.

20.   Defendants misappropriated Kahala's assets. For example, on February 2, 2015, King transferred $60,000 from Kahala to HTI Waln Team. King then purchased a $54,300 cashier's check payable to a treatment facility to pay personal expenses of Waln. King prepared a memo stating that "I authorized HTI [Waln Team] to pay for all expenses related to the medical treatment for the CEO" of HTI Waln Team. In all, defendants transferred approximately $287,000 in Kahala funds to HTI Waln Team between August 2014 and May 2015.

21.   Defendants liquidated Kahala's assets in April 2018 and received net proceeds in excess of $1.3 million (the Kahala Sale Proceeds). Because Halcyon owned equity units of Kahala, Halcyon and its members were entitled to receive a share of the Kahala Sale Proceeds. However, defendants did not distribute any portion of the Kahala Sale Proceeds to Halcyon or its members.

## 3.   Defendants Sell the Halcyon Building and Embezzle Part of the Sale Proceeds

22.   In December 2015, defendants, as managers of Halycon, sold the Halcyon Building, which was Halcyon's only real estate asset. Halcyon received net proceeds from the sale of approximately $2.4 million (the "Halcyon Sale Proceeds"), which were deposited into Halcyon's bank account. The Halcyon Sale Proceeds were the property of

*United States v. Waln et al*
USAO No. 2020R00248
Indictment - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Halcyon, and ultimately, of its members. However, defendants secretly converted some of these proceeds to their own use through the transactions described below.

23. Between February and May 2016, defendants secretly transferred, by interstate wire transmissions, approximately $820,000 of the Halcyon Sale Proceeds from Halcyon to HTI Waln Team. Defendants then transferred approximately $670,000 of these funds to King's personal bank accounts. Defendants did not disclose these transfers to Halcyon's investors.

24. Waln prepared a series of secret internal memoranda characterizing the $820,000 in transfers as "loans" to HTI Wealth. For example, on April 14, 2016, Waln prepared a secret memo stating that "I have authorized Halcyon Apartments . . . to make a loan to HTI Wealth in the amount of $200,000." The memo stated that the "loan" would be due in a single payment in October 2019. Defendants never repaid the "loan."

25. Similarly, on April 18, 2016, Waln wrote a secret internal memo stating that "I have authorized a loan from Halcyon to [HTI Waln Team] in the amount of $500,000." The memo stated that the purpose of the loan was fund construction of a personal residence for King. Waln wrote in the secret memo that "it is in the best interests of investors" to serve "as partners in the construction of personal residences for officers of HTI [Waln Team]." The memo stated the loan would be repaid in the future when King sold the residence. However, King never purchased the contemplated residence, and instead used the money to pay other personal expenses of Waln and King. Defendants never repaid the "loan."

26. On September 27, 2016, defendants secretly transferred $300,000 of the Halcyon Sale Proceeds to Pinnacle Lending, LLC, a limited liability corporation owned and controlled by King. King then transferred these funds to Echelon Luxury Homes LLC, a corporation owned primarily by HTI Waln Team. Waln prepared a private memorandum, which was not disclosed to investors, characterizing the payment as a "loan." Defendants never repaid the "loan."

*United States v. Waln et al*
USAO No. 2020R00248
Indictment - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### 4.   Defendants Invest the Remaining Halcyon Sales Proceeds in Azalea, and then Embezzle Halcyon's Share of the Azalea Sale Proceeds

27.   In August 2015, defendants formed a corporation called Azalea Waln Estate LLC ("Azalea").[1] Defendants designated HTI Waln Team as Azalea's member/manager. The stated purpose of Azalea was to construct two residences in Kirkland, Washington with a total budget of approximately $2.4 million.

28.   Between January and May of 2016, defendants transferred $1 million of the Halcyon Sale Proceeds to Azalea. Waln prepared an undisclosed memorandum stating that the purpose of the transfer was to fund a purchase by Halcyon of investment units in Azalea.

29.   Defendants partnered with a contractor ("Contractor 1") to construct the Azalea project. However, defendants stopped paying Contractor 1 after approximately three months, and also failed to pay project subcontractors.  As a result, Contractor 1 and the project subcontractors ceased work on the Azalea project.

30.   Defendants sold the unfinished Azalea project in April of 2018. After paying creditors, approximately $845,000 in sales proceeds remained (the Azalea Project Proceeds). Based on Halcyon's investment in Azalea, Halcyon and its members owned a substantial portion of Azalea's equity, and therefore were entitled to a substantial portion of the Azalea Project Proceeds.  However, defendants secretly distributed the Azalea Project Proceeds for their own use as discussed below.

31.   Between May and August of 2018, defendants transferred, by means of interstate wire transmissions, approximately $600,000 of the Azalea Project Proceeds from Azalea to HTI Waln Team. Defendants then transferred approximately $500,000 from HTI Waln Team's account to King's personal bank accounts. King used these funds for her personal benefit.

---

[1] Defendants changed the name of Azalea Waln Estate to "Waln Team Investments LLC" effective January 1, 2018. Azalea Waln Estate and Waln Team Investments are collectively referred to as "Azalea" in this Indictment.

*United States v. Waln et al*
USAO No. 2020R00248
Indictment - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

32.    On September 20, 2018, defendants transferred $156,477 of the Azalea Project Proceeds to Halcyon. This was the only portion of the Azalea Project Proceeds transferred to Halcyon. On the same day the money was received into Halcyon's bank account, defendants secretly, by means of interstate wire transmissions, caused Halcyon to purchase a $156,477 cashier's check. The cashier's check was made out to Waln's ex-wife, and used to pay Waln's personal alimony debt.

33.    The defendants executed a promissory note stating that the $156,447 payment was a "loan" from Halcyon to Waln that would be secured by a deed of trust on Waln's real property. However, as defendants well knew, Waln owned no real property and never prepared a deed of trust. Further, when Waln executed the promissory note, he planned to file bankruptcy in the near future. Four months later, Waln in fact filed for bankruptcy and sought discharge of the debt. Waln never repaid the "loan."

### 5.    Defendants Provide False Assurances to Halcyon Investors

34.    Waln prepared and provided to some investors annual fair market valuation forms that substantially overstated the value of Halycon, thereby concealing the fact that defendants had drained Halcyon's assets. For example, Waln executed valuation forms in January 2017, January 2018, and December 2018 that falsely valued Halcyon at amounts far in excess of its true value.

35.    By December 2018, defendants had appropriated for themselves all of Halcyon's assets. Defendants knew that the original 10-year investment period was about to expire, and that members would soon expect to be repaid.

36.    On December 15, 2018, Waln emailed a letter to investors announcing that Halcyon had "incurred a loss due to circumstances outside the control of management." Waln said that Halcyon had previously been "set to meet and possibly exceed our original return estimates" of a 20% annual return. However, Waln said, Halcyon's project was halted when Contractor 1 was "diagnosed with lung cancer." Waln told investors that, as a result of the cancer diagnosis, the project had to be sold "as-is," resulting in the loss of

*United States v. Waln et al*
USAO No. 2020R00248
Indictment - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

investor funds. In fact, Contractor 1 was never diagnosed with cancer. Waln omitted and failed to disclose that the true reason for Halcyon's failure was that Waln and King had appropriated all of Halcyon's funds through the "loans" and other transfers described above, and defendants did not have the funds to complete the project.

37.     Waln told investors that, as a result of the loss caused by Contractor 1's supposed cancer diagnosis, Waln would be required to extend the 10-year investment term by two to three  years. Even though Halcyon had no assets, and no prospect of recouping its losses, Waln wrote that "management expects we will be able to meet or exceed our original [20% annual] return estimates" after the additional two to three-year period.

38.     Waln also provided false personal assurances to investors to lull them into believing they would ultimately receive their money. For example, in December 2018, Waln wrote one investor that "the challenges encountered are well in hand and the situation is stable and positive," and that "Tamara and I look forward to a successful and profitable conclusion to the Halcyon placement just as soon as possible."

**6.     King Tells Investors Their Money is Gone and Dissolves Halcyon**

39.     On October 18, 2019, King sent a letter to investors notifying them that all of Halcyon's activities had ceased, and that "no additional funds have been realized. This means that the overall result will be a loss as the projects invested in failed despite the good intentions for successful outcomes. Unfortunately, due to the losses from multiple failed projects, there is no financial capital left to return any of your investment funds to you." King dissolved Halcyon on December 23, 2019.

40.     In all, defendants caused Halcyon to pay HTI Waln Team a total of nearly $1.6 million, including purported loans, management fees and commissions, between 2009 and September 2018. As a result of defendants' fraud, all of Halcyon's remaining investors lost their entire investments.

All in violation of Title 18, United States Code, Section 1349.

*United States v. Waln et al*
USAO No. 2020R00248
Indictment - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## COUNTS 2-9

### (Wire Fraud)

41.    The allegations set forth in Paragraphs 1 through 40 of this Indictment are re-alleged and incorporated as if fully set forth herein.

42.    Beginning at a time unknown, but approximately in or about February 2014, and continuing through at least December 15, 2018, in King County, within the Western District of Washington, and elsewhere, the defendants, PAUL WALN and TAMARA KING, and others known and unknown to the Grand Jury, devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and omissions.

43.    On or about the dates set forth below, in King County, for the purpose of executing and attempting to execute the scheme and artifice to defraud, PAUL WALN and TAMARA KING knowingly transmitted, and caused to be transmitted, by wire communication in interstate and foreign commerce, the following signs, signals, pictures and sounds, each transmission of which constitutes a separate count of this Indictment:

| Count | Date | Wire Transmission |
|-------|------|-------------------|
| 2 | June 8, 2018 | $60,000 wire transfer from Azalea (Waln Team Investments) Chase account to Waln Team LLC Chase account initiated by wire transmission from Western District of Washington |
| 3 | June 12, 2018 | $50,000 wire transfer from Azalea (Waln Team Investments) Chase account to Waln Team LLC Chase account initiated by wire transmission from Western District of Washington |
| 4 | June 20, 2018 | Purchase of cashier's check in the amount of $156,477.66 from Halcyon Chase bank account at Chase Bank in Bellevue, Washington |
| 5 | July 9, 2018 | $30,000 wire transfer from Azalea (Waln Team Investments) Chase account to Waln Team LLC Chase account initiated by wire transmission from Western District of Washington |

*United States v. Waln et al*
USAO No. 2020R00248
Indictment - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Count | Date | Wire Transmission |
|---|---|---|
| 6 | July 26, 2018 | $35,000 wire transfer from Azalea (Waln Team Investments) Chase account to Waln Team LLC Chase account initiated by wire transmission from Western District of Washington |
| 7 | July 27, 2018 | $20,000 wire transfer from Azalea (Waln Team Investments) Chase account to Waln Team LLC Chase account initiated by wire transmission from Western District of Washington |
| 8 | August 3, 2018 | $10,000 wire transfer from Azalea (Waln Team Investments) Chase account to Waln Team LLC Chase account initiated by wire transmission from Western District of Washington |
| 9 | August 9, 2018 | $130,000 wire transfer from Azalea (Waln Team Investments) Chase account to Waln Team LLC Chase account initiated by wire transmission from Western District of Washington |

44.    The Grand Jury further alleges that these crimes were committed during, and in furtherance of, the offense charged in Count 1.

All in violation of Title 18, United States Code, Section 1343 and Section 2.

## COUNTS 10-11

### (Money Laundering)

45.    The allegations set forth in Paragraphs 1 through 44 of this Indictment are re-alleged and incorporated as if fully set forth herein.

46.    On or about the dates set forth below, in King County, within the Western District of Washington, TAMARA KING knowingly and willfully engaged in monetary transactions affecting interstate commerce in criminally-derived property of a value greater than $10,000, that is, the withdrawal, deposit, and transfer of funds from and to the financial institutions identified below, such property having been derived from specified unlawful activities, that is, conspiracy to commit wire fraud and wire fraud:

*United States v. Waln et al*
USAO No. 2020R00248
Indictment - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Count | Date | Monetary Transaction |
|-------|------|----------------------|
| 10 | June 8, 2018 | $60,000 transfer from Waln Team Chase account to Tamara King Chase account |
| 11 | July 26, 2018 | $35,000 transfer from Waln Team Chase account to Tamara King Chase account |

All in violation of Title 18, United States Code, Section 1957 and Section 2.

## FORFEITURE ALLEGATION

47.    The allegations contained in Paragraphs 1–46 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture.

48.    Upon conviction of any of the offenses alleged in Counts 1–9, TAMARA KING and PAUL WALN shall forfeit to the United States any property constituting, or derived from, proceeds Defendants obtained directly or directly as a result of the wire-fraud scheme described above. All such property is forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), by way of Title 28, United States Code, Section 2461(c), and includes, but is not limited to, a judgment for a sum of money reflecting the proceeds Defendants obtained as result of the wire-fraud scheme.

49.    Upon conviction of any of the offenses alleged in Counts 10–11, TAMARA KING shall forfeit to the United States any property involved in such offense. All such property is forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), and includes, but is not limited to, a judgment for a sum of money reflecting the amount of property involved in the offense.

//
//

*United States v. Waln et al*
USAO No. 2020R00248
Indictment - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

50.    **Substitute Assets.** If any of the above-described forfeitable property, as a result of any act or omission of the defendant,

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the Court;

      d.    has been substantially diminished in value; or,

      e.    has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek the forfeiture of any other property of the defendant, up to the value of the above-described forfeitable property, pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL: *yes*

DATED: *October 4, 2023*

*Signature of Foreperson redacted pursuant to the policy of the Judicial Conference of the United States.*

_____
FOREPERSON

_____
TESSA M. GORMAN
Acting United States Attorney

_____
SETH WILKINSON
Assistant United States Attorney

*United States v. Waln et al*
USAO No. 2020R00248
Indictment - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970